**FILED**
**2ND JUDICIAL DISTRICT COURT**
**Bernalillo County**
**12/31/2020 12:19 PM**
**CLERK OF THE COURT**
Catherine Chavez

**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**SECOND JUDICIAL DISTRICT**

**SKATE CITY ALBUQUERQUE, INC.,**
**DBA ROLLER SKATE CITY**

      **Plaintiff,**

v.                                                    **CAUSE NO.**   D-202-CV-2021-00007

**AXIS SURPLUS INSURANCE COMPANY,**
**JBL TRINITY GROUP, LTD., and**
**YORK RISK SERVICES GROUP, INC.,**

      **Defendants.**

### COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

COMES NOW, Skate City Albuquerque, Inc., DBA Roller Skate City, by and through its

undersigned counsel, Geoffrey R. Romero, Esq., and Paul Zebrowski, Esq. and Thomas A. Biscup,

Esq., and files its Complaint for Damages and Declaratory Relief against Axis Surplus Insurance

Company, JBL Trinity Group, Ltd., and York Risk Services Group, Inc., and as grounds therefore

state as follows:

### I.  BACKGROUND

1.       At all times relevant hereto, Plaintiff Skate City Albuquerque, Inc., DBA Roller

Skate City ("Roller Skate City") owned the commercial Property, located at 400 Paisano Street

NE, Albuquerque, New Mexico 87123, in Bernalillo County (the "Property").

2.       Upon information and belief, at all times relevant hereto, Defendant, Axis Surplus

Insurance Company ("Axis") which is an eligible surplus lines insurer in the state of New Mexico.

1

3.      Upon information and belief, at all times relevant hereto, Defendant JBL Trinity Group, Ltd. ("JBL") was the broker/agent and is a foreign corporation that engaged in conduct in or directed to or related to the state of New Mexico.

4.      Upon information and belief, at all times relevant hereto, Defendant York Risk Services Group, Inc. ("York") was and is a corporation that engaged in conduct in or directed to or related to the state of New Mexico.

5.      In consideration for a premium paid to it, Axis issued an insurance policy, Policy Number EAF 796681-18 (the "Axis Policy" or "Policy") to Roller Skating Association International ("RSAI"), which covered members of RSAI who opted to participate in the coverage.

6.      The Policy covered members of RSAI, of which Roller Skate City was a member.

7.      The Policy provides coverage for all perils which are not specifically excluded.

8.      At all times material, JBL agreed to procure property insurance coverage for Roller Skate City.

9.      At all times material, all the Defendants understood the risk that would be posed to Roller Skate City if it did not have property coverage for its Property.

10.     Roller Skate City accepted Defendants' offer and elected to protect its Property by purchasing coverage from Axis, through JBL.

11.     JBL assured Roller Skate City that it would be covered by the Policy, and solicited information from Roller Skate City to commence coverage. At all times, JBL stated to Roller Skate City that it would be covered by the Policy, should Roller Skate City complete the required applications.

12.     JBL assured Roller Skate City that the Policy was created to cover skating rink

2

businesses, such as Roller Skate City, and that it would provide the desired coverage, should Roller Skate City elect to purchase the coverage.

13.     Roller Skate City completed the required applications, and did not look elsewhere for property insurance, believing, based on the statements of JBL, that the Property was fully protected.

14.     On December 28, 2018, JBL provided a quote to Roller Skate City for coverage from January 1, 2019 to April 1, 2019. JBL offered coverage under the Axis policy in the amount of $2,515,738 of coverage for Roller Skate City's building, and $300,000 in business interruption coverage.

15.     Roller Skate City accepted the quotation. On December 31, 2018, Anthony J. Profaci, of JBL, confirmed in an email to Roller Skate City that all of the Plaintiff's "signed documents are received and coverage is bound."

16.     Roller Skate City reasonably relied on Defendants' assurances that its Property would be covered, and that it was covered on January 1, 2019.

17.     The Policy was to go into effect at 12:01 a.m. on January 1, 2019.

18.     On or about January 1, 2019, at approximately 1:35 a.m., just hours after the commencement of the Policy, a windstorm in the Albuquerque area hit the property and caused extensive damage to the subject property.

19.     The windstorm event was witnessed by numerous individuals, and was reported in local news. It occurred after a New Year's Eve party at the Property.

20.     Roller Skate City timely filed an insurance claim with JBL.

21.     Axis assigned the insurance claim to York Insurance Services under York's File

3

No. AX-2608 (the "Claim").

22.     York, on behalf of Axis, initially acknowledged the claim in a letter dated January 3, 2019. York wrote, "On behalf of Axis Surplus Insurance Company, please note that we are investigating your claim to determine if and when the location subject of this claim was reported to the insurer."

23.     There was no reasonable dispute that Roller Skate City had reported the location subject of the claim timely, because the loss event had occurred just two days prior to York's letter.

24.     Neither York, nor Axis, informed Roller Skate City during the month of January that no coverage existed because Roller Skate City was not covered.

25.     Only later, after determining the loss to be a significant and expensive Claim, did York and Axis attempt to avoid payment of a covered claim by arguing that Roller Skate City was not covered under the Policy.

26.     Axis and York knew that Roller Skate City was covered by the Policy, but took the position that it was not covered in order to avoid payment.

27.     Axis and York nonetheless failed to properly adjust and make payment on the claim, and as a result Roller Skate City was ultimately compelled to retain a public adjuster and counsel, the latter of whom wrote to JBL on March 28, 2019.

28.     Roller Skate City's letter was responded to a month later, on April 26, 2019, by counsel for Axis. In the letter, Axis stated – for the first time – that Roller Skate City was not covered under the Policy.

29.     Axis stated that it required all named insureds to be submitted to and approved by Axis by May 1, 2018. Axis also stated that JBL had submitted its "request to add Roller King to

4

the policy" on January 2, 2019.

30.     At no time did JBL indicate to Roller Skate City that Axis would not cover Roller Skate City because it had not submitted its application in April of 2018.

31.     Defendants failed and refused to evaluate the information and surrounding facts regarding the Claim, choosing instead to hide behind palpably incorrect assumptions and conclusions of the agents, employees, and/or consultants.   Defendants have further failed or refused, and continue to fail or refuse, to pay covered claims on a timely basis as required by the insurance contract and as required by the New Mexico Insurance Code. Instead, Defendants have wrongfully denied claims when liability for coverage under the policy was reasonably clear.

32.     Defendants bound coverage for Roller Skate City and informed Roller Skate City of that fact, but then refused to acknowledge coverage after a loss event.

33.     In contrast, Roller Skate City communicated with and cooperated with every request made by Defendants and has displayed, at reasonable times, all of the relevant records in its possession, documents, buildings and contents that are the subject of the loss.   Defendants persisted in denial of coverage to avoid payment of the full amounts due for Plaintiff's claim, even though a person of ordinary prudence and care would have done otherwise.   No reasonable basis exists or has existed at any time for Defendants' delay and/or refusal to provide covered benefits due and owing under the insurance policy in question.

34.     The Defendants' conduct described above regarding the was a producing, proximate and direct cause of actual damages to Plaintiff.   These damages include, but are not limited to, the full benefits payable under the insurance policy, together with all out-of-pocket expenses incurred by Plaintiff. Plaintiff seeks prejudgment and post judgment interest at the

highest lawful rate. The amount of actual damages which should be awarded exceeds the minimum jurisdictional limits of this Court.

35.     Defendants Axis, JBL, and York are jointly and severally liable for all damages resulting from their wrongful conduct and breach of the insurance contract between Axis and Roller Skate City. Axis bears *respondeat superior* liability for the acts and omissions of JBL, its agent/broker, and its claims administrator, York.

36.     Defendants, through JBL, informed Roller Skate City that it was covered immediately prior to the loss event (within 12 hours), and then claimed that there was no coverage after the loss event occurred.

37.     No reasonable basis exists or has existed at any time for Defendants Axis, JBL, and York, to delay and/or refusal to provide covered benefits due.

38.     Jurisdiction is proper in this Court because the Property which is the subject of this action, is located in Bernalillo County, New Mexico, and all or substantially all of the events described occurred in Bernalillo County, New Mexico.

## CAUSES OF ACTION

### COUNT 1 – Request for Declaratory Relief
#### (Against Axis)

39.     Plaintiff re-alleges the above paragraphs as if fully set forth herein.

40.     Roller Skate City and Axis are in doubt and dispute over their rights and obligations under the aforementioned policy of insurance. Such doubt and dispute have created a bona fide, actual and present adverse dispute between the parties regarding the applicability of the above-stated policy and demand for coverage and benefits.

WHEREFORE, this Court should declare:

6

a. That Plaintiff is entitled to coverage under the Policy; and

b. That Plaintiff is entitled to damages as a result of the Defendants' wrongful conduct and denial of the claim.

## COUNT 2 – Breach of Contract
### (Against Axis)

41.     Plaintiff re-alleges the above paragraphs as if fully set forth herein.

42.     In accordance with the terms of the Policy, Axis had a duty to indemnify Roller Skate City for covered losses incurred to its commercial property located at 400 Paisano St NE, Albuquerque, Bernalillo County, New Mexico.

43.     Roller Skate City elected to participate in the Policy, and thereby became a named insured under the Policy.

44.     Axis's agent, JBL, informed Roller Skate City that its coverage was bound.

45.     Roller Skate City paid its premium payment for coverage under the Policy.

46.     Axis has failed to properly adjust the covered loss to Roller Skate City's commercial property, and instead wrongfully claimed that Roller Skate City was not covered by the Policy.

47.     Axis has wrongfully refused to tender all proceeds due and owing Roller Skate City under the Policy, even though coverage has become reasonably clear.

48.     Axis' denial of coverage, failure to fully and properly adjust the loss, and refusal to tender all proceeds due and owing under the policy constitute material breaches of the insurance policy.

49.     As a direct result of Axis's breach of its contract of insurance, Roller Skate City has suffered and continues to suffer direct and reasonably foreseeable consequential damages, and

has incurred attorney fees and other expenses in amounts to be determined at trial.

**COUNT 3 – Breach of the Common Law Obligation of**

**Good Faith and Fair Dealing**

**(Against Axis and York)**

50.     Plaintiff re-alleges the above paragraphs as if fully set forth herein.

51.     Implicit in the contract of insurance between Roller Skate City and Axis/York was the covenant that Axis and York would at all times act in good faith and deal honestly and fairly with Roller Skate City.

52.     Axis and York's violations of its obligation of good faith and fair dealing include, but are not limited to:

> a.     Failing to interpret the contract of insurance in accordance with New Mexico law and in accordance with Roller Skate City's reasonable expectations;
>
> b.     Inserting and attempting to enforce invalid policy provisions;
>
> c.     Failing and refusing to promptly and fairly investigate and process and determine coverage under the Policy;
>
> d.     Failing to adopt and implement reasonable standards for the prompt, fair, honest, and equitable investigation, processing, and evaluation of Roller Skate City's Claim;
>
> e.     Failing to supervise Axis's employees, representatives, agents, and adjusters to ensure that claims are handled in a fair and proper manner;
>
> f.     Making material misrepresentations concerning policy rights and benefits in order to gain a windfall advantage;
>
> g.     Not attempting in good faith to effectuate prompt, fair, and equitable

settlements of Roller Skate City's claims when liability under the Policy had become reasonably clear;

h.      Wrongfully denying coverage to its insured, Roller Skate City, under the Policy;

i.      Instituting a performance-based compensation plan for employees, agents, adjusters, and representatives, which encourages placing the financial interests of the insurer above the financial interests of the insured in order to obtain a windfall profit; and

k.      Forcing the insured, Roller Skate City, to file suit to recover all proceeds due and owing under the Policy.

53.     As a result of Axis's breach of its covenant of good faith and fair dealing, Roller Skate City has suffered and continues to suffer extra-contractual damages which were reasonably foreseeable to Defendants, including, but not limited to vexation, annoyance, emotional distress, loss of use, and loss of opportunity.

54.     Axis's acts and omissions alleged herein in breach in the implied covenant of good faith and fair dealing were done intentionally, willfully, wantonly, grossly, maliciously and/or with reckless disregard for the rights of Roller Skate City. Accordingly, Roller Skate City is entitled to recover punitive damages in an amount to be determined by the jury and sufficient to punish Axis for its misconduct and to deter others from similar conduct in the future.

WHEREFORE, the Plaintiff, Roller Skate City, requests this Court enter judgment against Axis for an award of compensatory extra-contractual damages, punitive damages, pre-judgment and post-judgment interest as allowed by law, taxable costs, and any othis relief this court deems

appropriate.

### Count 4 – Violation of the New Mexico Unfair Trade Practices Act
### (Against All Defendants)

55.     Roller Skate City re-alleges all preceding paragraphs as if fully set forth herein.

56.     There was in effect at all times material a state statute commonly known as the New Mexico Unfair Practices Act ("UPA"), NMSA 1978, Sections 57-12-1 to -26 (1967, as amended), including but not limited to those subsections in Section 57-12-2(D)(5), (D)(7), (D)(14), (D)(15), (D)(17) and Section 57-12-2(E), which prohibits a person selling insurance from engaging in unfair or deceptive trade practices:

> D.     "unfair or deceptive trade practice" means an act specifically declared unlawful pursuant to the Unfair Trade Practices Act [Chapter 57, Article 12 NMSA 1978], a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead and includes but is not limited to:
>
> > (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a 00sponsorship, approval, status, affiliatio
> >
> > * * *
> >
> > (7) representing that the goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are

10

of another;

\* \* \*

(14)   using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive;

(15)   stating that a transaction involves rights, remedies or obligations that it does not involve;

\(17) failure to deliver the quality or quantity of goods or services contracted for; and

E. "unconscionable trade practice" means an act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, including services provided by licensed professionals, or in the extension of credit or in the collection of debts which to a person's detriment:

(1)   takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or

(2)   results in a gross disparity between the value received by a person and the price paid.

57.   Defendants misrepresented and failed to deliver the quality or quantity of services contracted for by failing to procure and afford insurance benefits Policy covering known and foreseeable risks.

58.   Defendants misrepresented the benefits that were purchased, by advising Roller Skate City it was covered for risks under the Policy but later denying there was coverage.

11

59.     Defendants, acting through their agents, adjusters, employees, and others working on their behalf, as set forth above, knowingly and willfully engaged in unfair trade practices prohibited under Section 57-12-3, including but not limited to those subsections in Section 57-12-2(D)(5), (D)(7), (D)(14), (D)(15), (D)(17) and Section 57-12-2(E).

60.     As a direct and proximate result of Defendants' wrongful conduct, Roller Skate City has suffered damages, and continues to suffer the loss.

61.     Defendants' acts and omissions alleged herein in violating the New Mexico Unfair Practices Act were done intentionally, willfully, wantonly, maliciously, and/or with reckless disregard for the rights of Roller Skate City. As such, Roller Skate City is entitled to recover punitive damages in an amount to be determined by the jury and sufficient to punish Defendants for their misconduct and to deter others from similar conduct in the future.

62.     Defendants have willfully engaged in "unfair and deceptive trade practice[s]." As such, Roller Skate City is entitled to recover additional damages pursuant to NMSA § 57-12-10 in an amount up to three times his actual damages.

63.     Roller Skate City has been forced to retain the services of attorneys to enforce his rights herein, and as such, pursuant to NMSA § 57-12-10 and § 39-2-1, it is entitled to an award of attorneys' fees and costs associated with this action.

**COUNT 5: Negligence**

**(Against JBL)**

64.     Roller Skate City re-alleges all preceding paragraphs as if fully set forth herein.

65.     JBL possessed a duty to Roller Skate City to exercise reasonable skill, care, and diligence in procuring the requested Policy and in its interactions with Roller Skate City.

12

66.     In procuring the Policy for Roller Skate City, JBL owed it several duties, including, without limitation, (i) the duty to ensure that Roller Skate City was actually covered by the Policy JBL had sold to it; (ii) to refrain from informing Roller Skate City that it could be covered by an Axis policy if the policy language precluded Roller Skate City's participation in it; (iii) to properly acquaint itself with the various terms, provisions, conditions, restrictions, limitations, exclusions, and the like offered by and/or included in the Policy; (iv) to fully and properly explain the terms and conditions of the Policy to Roller Skate City, taking into account that Roller Skate City was not versed in the details and intricacies of insurance policies and it was relying on JBL's expertise in that regard, and (v) to fully disclose relevant eligibility issues, including, but not limited to requirements that potential insureds apply for the Policy before April of the prior year.

67.     JBL fell below the appropriate standard of care for an insurance producer by, among other things, failing to fulfill the duties described above.

## COUNT 6: NEGLIGENT MISREPRESENTATION
## (AGAINST ALL DEFENDANTS)

68.     Roller Skate City re-alleges all preceding paragraphs as if fully set forth herein.

69.     Defendants are vicariously liable for the acts and omissions of their employees and agents.

70.     Anthony Profacci, of JBL, failed to disclose material information, including but not limited to a supposed refusal to provide coverage to Roller Skate City because it had not submitted its application prior to May of 2018.

71.     Upon information and belief, at the time Profacci made misrepresentations to Roller Skate City, he was acting on behalf of JBL in selling insurance, but also acting in concert and on

behalf of Defendants Axis in the sale of such coverage.

72.     Defendants JBL and Axis intended that Roller Skate City would rely on whatever information it presented in order to induce it to purchase the Policy.

73.     Defendants JBL failed to exercise reasonable care or competence in obtaining or communicating information concerning the Policy.

74.     Roller Skate City relied on JBL to provide it with complete details about its eligibility for the Policy, because Roller Skate City was never presented with a copy of the Policy itself until after the loss event.

75.     In addition, Defendants Axis and York knew, or should have known, that Roller Skate City was covered by the Policy.

76.     However, neither Axis nor York conducted sufficient investigation into Roller Skate City's coverage.

77.     Upon information and belief, neither Axis nor York has a reasonable basis to believe that Roller Skate City was not covered by the Policy

78.     Nevertheless, Axis and York communicated to Roller Skate City that it was not covered by the Policy. Roller Skate City reasonably relied on these misrepresentations and failed to pursue its Claim for over a year.

79.     As a result of its reliance on Defendants, Roller Skate City has suffered damages, including consequential damages.

## NEGLIGENT FAILURE TO PROCURE INSURANCE COVERAGE AND

## NEGLIGENT FAILURE TO INFORM

### (DEFENDANT JBL)

14

80.     Roller Skate City re-alleges all preceding paragraphs as if fully set forth herein.

81.     By contracting to procure insurance coverage for Roller Skate City to protect its property against loss JBL entered into a contract with Roller Skate City and had a duty to procure the coverage promised.

82.     JBL breached its duty by failing to procure coverage to protect Roller Skate City against known physical risks to its Property and failed to inform Roller Skate City that it had not yet procured the promised coverage.

83.     It was foreseeable that Roller Skate City would be damaged by the failure of JBL to procure property insurance coverage, and that it would damaged by loss events, including by a wind storm.

84.     Roller Skate City sustained damages as a result of the failure of JBL to procure property insurance which included coverage for wind storm damage. The  damages suffered by Roller Skate City include the damage to its roof.

85.     JBL further had a duty to inform Roller Skate City if it was not covered, in order to allow Roller Skate City to obtain alternative coverage.

86.     JBL did not inform Roller Skate City of any potential lack of coverage, and instead confirmed coverage less than 12 hours prior to a major loss event.

## COUNT VII

## BREACH OF FIDUCIARY DUTIES

### (All Defendants)

87.     Roller Skate City re-alleges all preceding paragraphs as if fully set forth herein.

88.     At all times material Defendants were acting as insurers and/or agents in the sale of

15

property insurance coverage and owed a fiduciary duty to Roller Skate City to provide property insurance coverage for Roller Skate City.

89.     Defendants breached their fiduciary duty to Roller Skate City by failing to provide property insurance coverage.

90.     Defendants further breached their fiduciary duty by failing to inform Roller Skate City that it was allegedly not eligible for the Policy, after a loss had occurred.

91.     Roller Skate City incurred damages as a result of the breaches of duty of Defendants.

## **PRAYER FOR RELIEF**

**WHEREFORE** Plaintiff, Roller Skate City, requests this Court enter a judgment against Defendants, Axis Surplus Insurance Company, JBL Trinity Group, Ltd., and York Risk Services Group, Inc., as follows:

a. All amounts contracted for pursuant to the subject Axis Policy;

b. All compensatory damages;

c. Punitive damages;

d. Treble damages as allowed under New Mexico law;

e. Pre- and post-judgment interest;

f. Attorneys' fees and costs; and

g. All other relief that the Court deems just and proper.

16

DATED this 31st day of December, 2020.

Respectfully submitted,

**ZEBROWSKI LAW**

_____s/Thomas A. Biscup_____
Thomas A. Biscup (NM Bar No. 150821)
Paul Zebrowski (NM Bar No. 147479)
4801 All Saints Road NW
Albuquerque, New Mexico 87120
(505) 715-5161 (phone)
(586) 566-6898 (facsimile)
paul@zebrowskilaw.com
tom@zebrowskilaw.com

and

**LAW OFFICES OF GEOFFREY R. ROMERO**

Geoffrey R. Romero, Esq.
4801 All Saints Rd. NW
Albuquerque, NM 87120
(505) 247-3338
Geoff@GeoffRomeroLaw.com

*Attorneys for Plaintiff*

17

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
12/31/2020 12:19 PM
CLERK OF THE COURT
Catherine Chavez

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT

SKATE CITY ALBUQUERQUE, INC.,
DBA ROLLER SKATE CITY,

     Plaintiff,

v.                      CAUSE NO.   D-202-CV-2021-00007

AXIS SURPLUS INSURANCE COMPANY,
JBL TRINITY GROUP, LTD., and
YORK RISK SERVICES GROUP, INC.,

     Defendants.

## COURT-ANNEXED ARBITRATION CERTIFICATE

COMES NOW, Plaintiff Skate City Albuquerque, Inc., DBA Roller Skate City, by and through its undersigned counsel, Geoffrey R. Romero, Esq., and Paul Zebrowski, Esq. and Thomas A. Biscup, Esq., and pursuant to Second Judicial District Local Rules, Rule LR2-603, certifies as follows:

A. [ ] This party seeks only a money judgment and the amount sought does not exceed twenty-five thousand dollars ($25,000.00) exclusive of punitive damages, interest, costs, and attorney fees. (Arbitration)

B. [X] This party seeks relief other than a money judgment and/or seeks relief in excess of twenty-five thousand dollars ($25,000.00) exclusive of punitive damages, interest, costs, and attorney fees. (No Arbitration).

1

DATED this 31st day of December, 2020.

Respectfully submitted,

**ZEBROWSKI LAW**

_____ s/Thomas A. Biscup _____
Thomas A. Biscup (NM Bar No. 150821)
Paul Zebrowski (NM Bar No. 147479)
4801 All Saints Road NW
Albuquerque, New Mexico 87120
(505) 715-5161 (phone)
(586) 566-6898 (facsimile)
paul@zebrowskilaw.com
tom@zebrowskilaw.com

and

**LAW OFFICES OF GEOFFREY R. ROMERO**

Geoffrey R. Romero, Esq.
4801 All Saints Rd. NW
Albuquerque, NM 87120
(505) 247-3338
Geoff@GeoffRomeroLaw.com

*Attorneys for Plaintiff*

2

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
12/31/2020 12:19 PM
CLERK OF THE COURT
Catherine Chavez

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT


SKATE CITY ALBUQUERQUE, INC.,
DBA ROLLER SKATE CITY,

        Plaintiff,

v.                             **CAUSE NO.**   D-202-CV-2021-00007

AXIS SURPLUS INSURANCE COMPANY,
JBL TRINITY GROUP, LTD., and
YORK RISK SERVICES GROUP, INC.,

        Defendants.

## JURY DEMAND

COMES NOW, Plaintiff Skate City Albuquerque, Inc., DBA Roller Skate City, by and through its undersigned counsel, Geoffrey R. Romero, Esq., and Paul Zebrowski, Esq. and Thomas A. Biscup, Esq., and demands a trial by jury of twelve. The jury fee in the amount of $300.00 is tendered with this demand.


DATED this 31st day of December, 2020.


                         Respectfully submitted,

                         **ZEBROWSKI LAW**

                              s/Thomas A. Biscup
                         Thomas A. Biscup (NM Bar No. 150821)
                         Paul Zebrowski (NM Bar No. 147479)
                         4801 All Saints Road NW

Albuquerque, New Mexico 87120
(505) 715-5161 (phone)
(586) 566-6898 (facsimile)
paul@zebrowskilaw.com
tom@zebrowskilaw.com

and

**LAW OFFICES OF GEOFFREY R. ROMERO**

Geoffrey R. Romero, Esq.
4801 All Saints Rd. NW
Albuquerque, NM 87120
(505) 247-3338
Geoff@GeoffRomeroLaw.com

*Attorneys for Plaintiff*

2

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
8/16/2021 2:59 PM
CLERK OF THE COURT
Patsy Baca

## SUMMONS

| District Court: Second<br>Bernalillo County, New Mexico<br>Court Address:<br>Post Office Box 488/400 Lomas Blvd. NW<br>Albuquerque, New Mexico 87103/87102<br>Court Telephone No.: (505)841-7451 | Case Number:<br>D-202-CV-2021-00007<br><br>Assigned Judge:<br>Benjamin Chavez |
| --- | --- |
| Plaintiff: SKATE CITY ALBUQUERQUE, INC. DBA ROLLER SKATE CITY,<br><br>v.<br>AXIS SURPLUS INSURANCE COMPANY, JBL TRINITY GROUP LTD., YORK RISK SERVICES GROUP, INC., | Defendant<br>Name: YORK RISK SERVICES GROUP, INC.<br>c/o MC-CSC1<br>726 E. Michigan Dr Ste. 101<br>Hobbs, NM  88240 |

### TO THE ABOVE-NAMED DEFENDANT(S):  Take notice that

1.      A lawsuit has been filed against you.  A copy of the lawsuit is attached.  The Court issued this Summons.

2.      You must respond to this lawsuit in writing.  You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons.  (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

3.       You must file (in person or by mail) your written response with the Court.  When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.      If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.      You are entitled to a jury trial in most types of lawsuits.  To ask for a jury trial, you must request one in writing and pay a jury fee.

6.      If you need an interpreter, you must ask for one in writing.

7.      You may wish to consult a lawyer.  You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at _____, New Mexico, this _____ day of 8/4/2021 , 20____.



Katina Watson
SECOND JUDICIAL DISTRICT COURT
CLERK OF THE COURT
By_____
Deputy Clerk

/s/Thomas A. Biscup
Signature of Attorney for Plaintiff/Pro Se Party
Name:            Thomas A. Biscup
Address:         4801 All Saints Road NW
Telephone No.:   (505)-715-5161
Fax No.:         (586) 566-6898
Email Address:   tom@zebrowskilaw.com

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

**RETURN**

STATE OF NEW MEXICO  )
                     )ss
COUNTY OF _Lea_      )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____Lea_____ county on the _11th_ day of _August_, _2021_, by delivering a copy of this summons, with a copy of complaint, jury demand and Court-annexed Arbitration Certification attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]   to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ]   to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint, jury demand and Court-annexed Arbitration Certification attached, in the following manner:

[ ]   to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons, complaint, jury demand and Court-annexed Arbitration Certification.

[ ]   to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons, complaint, jury demand and Court-annexed Arbitration Certification by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[X]   to _Luanne Soto_ c/o _my CSC, 726 E. Michigan Av. Ste 101 in_, an agent authorized to receive service of process for defendant _York Risk Svcs Group, Inc._    _Hobbs, NM._

[ ]   to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when the defendant is a minor or an incompetent person*).

[ ]   to _____ (*name of person*), _____, (*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: _____77.95_____

_Signature of person making service_

Title (*if any*)



Subscribed and sworn to before me this 11th day of August, 2020

Judge, notary or other officer
authorized to administer oaths

Official title

## USE NOTE

1.     Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

2.     If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013.]